UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIC S. SNYDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:13-cv-01909-JMS-DML |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Eric S. Snyder applied for benefits from the Social Security Administration ("SSA") on April 8, 2011, alleging a disability onset date of October 31, 2009.  His applications were denied on May 27, 2011, and denied again after reconsideration on July 19, 2011.  A hearing was held on June 21, 2012, in front of Administrative Law Judge Albert J. Velasquez (the "ALJ"), who determined that Mr. Snyder was not entitled to receive benefits.  [Filing No. 12-2 at 17-30.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Snyder has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits.  [Filing No. 1.]

## I.
### BACKGROUND

Mr. Snyder was forty-five years old as of his onset date.  [Filing No. 12-5 at 2.]  Previously, he had worked as a manager at a printing company, a manager at a convenience store, and a web page designer.  [Filing No. 12-2 at 50.]   Mr. Snyder claims he has been disabled since October

31, 2009, because of a variety of physical impairments that will be discussed as necessary below.[1]
[Filing No. 12-5 at 2.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on July 20, 2012.  [Filing No. 12-2 at 17-30.]  The ALJ found as follows:

· At Step One of the analysis, the ALJ found that Mr. Snyder had not engaged in substantial gainful activity[2] after the alleged disability onset date.  [Filing No. 12-2 at 19.]

· At Step Two, the ALJ found that Mr. Snyder suffered from the severe impairments of obesity, rheumatoid arthritis, episodic gout, residual effects of hernia repairs, diabetes mellitus, and sleep apnea.  [Filing No. 12-2 at 19.]

· At Step Three, the ALJ found that Mr. Snyder did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  [Filing No. 12-2 at 20.]  The ALJ concluded that Mr. Snyder had the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and five pounds frequently; to stand or walk for two hours in an eight-hour workday; to sit for six hours in an eight-hour workday; and to perform work that allows an individual to elevate his or her feet eighteen inches while seated.  The ALJ also concluded that Mr. Snyder cannot climb ladders,

_____

[1] Mr. Snyder detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts.  [Filing No. 19 at 2-4.]  Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Snyder, the Court will simply incorporate those facts by reference herein.  Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

ropes, and scaffolds; cannot kneel and crawl; can occasionally climb ramps and stairs, balance, stoop, and crouch; cannot work around unprotected heights, dangerous moving machinery, open flames, or large bodies of water; and cannot operate a motor vehicle. [Filing No. 12-2 at 22.]

· At Step Four, the ALJ found that Mr. Snyder was unable to perform any of his past relevant work. [Filing No. 12-2 at 27.]

· At Step Five, the ALJ found that considering Mr. Snyder's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. Specifically, the ALJ found Mr. Snyder would be capable of working as an information clerk, telemarketer, or general office clerk. [Filing No. 12-2 at 29.]

Based on these findings, the ALJ concluded that Mr. Snyder was not disabled and was not entitled to benefits. [Filing No. 12-2 at 29.] Mr. Snyder requested that the Appeals Council review the ALJ's decision and submitted additional medical records, but on October 31, 2013, the Council denied that request. [Filing No. 12-2 at 2-4.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Snyder subsequently sought relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the

credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1)whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the

appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Mr. Snyder raises two main arguments on appeal: first, that the ALJ's RFC determination is flawed because it is not based on substantial evidence, [Filing No. 14 at 12-15]; and second, that the Appeals Council improperly failed to articulate its reasons for finding that Mr. Snyder's newly submitted evidence was not "new and material," [Filing No. 14 at 15-17].

### A. Leg Elevation

Mr. Snyder argues that the ALJ erred by equivocating the recommendation of Dr. Kteleh, his treating rheumatologist, to elevate his legs above his heart two to three times daily with elevating his legs eighteen inches. [Filing No. 14 at 13-14.] He argues that there is no evidence in the record to support the ALJ's conclusion that elevating eighteen inches is equivalent to elevating above the heart, and that this error "is not harmless" because requiring elevation above the heart leads to a finding of disability, while requiring elevation of eighteen inches does not. [Filing No. 14 at 14-15.]

In response, the Commissioner argues that the ALJ's RFC finding was consistent with the opinions of two State agency medical experts, and that the ALJ "acknowledged Dr. Kteleh's statement but did not adopt the limitation precisely as the doctor set it forth." [Filing No. 19 at 7.] The Commissioner also argues that the statement Dr. Kteleh made about Mr. Snyder needing to elevate his legs above the heart appeared on one medical note with no indication of this need anywhere else in the record, that Dr. Kteleh had scratched off a number relating to the amount of time Mr. Snyder had to elevate his legs and replaced it with another, and that the ALJ noted at the

hearing that "it did not look like the note 'was a very considered response.'" [Filing No. 19 at 7-8.] The Commissioner further alleges that Mr. Snyder himself testified to sitting for hours at a time without leg elevation. [Filing No. 19 at 8.]

On reply, Mr. Snyder further emphasizes the critical vocational implication between a need to elevate eighteen inches versus a need to elevate above the heart. [Filing No. 20 at 1.] Mr. Snyder argues that the justifications the Commissioner set forth in her response were not employed by the ALJ when he concluded that an eighteen-inch elevation would be equivalent to an above-the-heart elevation. [Filing No. 20 at 2-3.] Instead, Mr. Snyder alleges that "the ALJ appeared to have reached his conclusion *sua sponte*," and that "the eighteen inches is made up out of whole cloth." [Filing No. 20 at 2-3.]

In connection with Mr. Snyder's need to elevate his legs, the ALJ stated:

> The claimant's treating rheumatologist, Dr. Kteleh, provided a medical note for the claimant in August 2011….He reported that he recommended that the claimant have his legs elevated above heart level two to three times daily, for one to two hours at a time, due to fluid retention….Overall, I acknowledge Dr. Kteleh's statement, and as such, included an additional restriction requiring leg elevation in the above defined residual functional capacity. I find that, so long as the claimant is able to elevate his legs at a height of eighteen inches during the workday, he is following Dr. Kteleh's recommendation. Notably, Dr. Kteleh indicated that the claimant had to elevate his legs two to three times daily, but he did not specify that he had to do all three sessions during the workday. Presumably, it would be appropriate if the claimant elevated his legs at a height of eighteen inches during the workday.

[Filing No. 12-2 at 25.]

Later in his opinion, the ALJ noted "the claimant's treating rheumatologist advised him to elevate his legs, in an effort to avoid swelling of the bilateral extremities….Based on the nature of this recommendation, as well as that it is based upon documented findings, I agree that the claimant needs to follow this treatment measure. As such, I included an accommodation in his residual

6

functional capacity to ensure that he can elevate his legs during the workday." [Filing No. 12-2 at 26.]

Rather than rejecting Dr. Kteleh's recommendation that Mr. Snyder elevate his legs above his heart two to three times daily for one to two hours at a time – for example, because no other medical professionals made that recommendation, or because it is contradicted by other medical evidence – the ALJ specifically "acknowledged" the recommendation, and stated that he "agree[d] that the claimant needs to follow this treatment measure." [Filing No. 12-2 at 26.] But then, inexplicably, the ALJ changed the leg elevation requirement from above heart level to eighteen inches. The ALJ stated that elevating eighteen inches would be "following Dr. Kteleh's recommendation," and that "[p]resumably, it would be appropriate if the claimant elevated his legs at a height of eighteen inches during the workday." However, he did not explain why or how he reached that conclusion. Additionally, while the ALJ notes that Dr. Kteleh "did not specify that [Mr. Snyder] had to do all three [elevation] sessions during the workday," perhaps hinting that the above-the-heart elevations could be done at home before and after work, he does not explicitly say that.

Put simply, the ALJ did not build a logical bridge from the evidence to his conclusion, and this case must be remanded so he can consider all of the evidence and thoroughly explain his conclusion. While upon reconsideration of the evidence the ALJ may or may not find a basis in the record evidence to justify using an eighteen-inch elevation requirement in the RFC rather than an above-the-heart elevation requirement, either way he must build a logical bridge from the

evidence to his conclusion.  *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).[3]  This he has

not done, so remand is required.

### B.  Newly Submitted Evidence

Mr. Snyder contends that though the Appeals Council made his newly submitted evidence

a part of the record, it erroneously found that the evidence "does not provide a basis for changing

the Administrative Law Judge's decision."  [Filing No. 14 at 15.]  Furthermore, Mr. Snyder argues

that the "boilerplate language" the Appeals Council adopted in dismissing his new evidence is too

ambiguous.  [Filing No. 14 at 15.]

Because the Court has found that remand is required so that the ALJ can review the record

evidence and develop a logical bridge between that evidence and Mr. Snyder's RFC, it need not

determine whether the Appeals Council erred in finding that his newly submitted evidence did not

provide a basis for changing the ALJ's decision and in not properly explaining that determination.

The ALJ is instructed on remand, however, to consider all of the evidence in the record – including

the newly submitted evidence that Mr. Snyder submitted to the Appeals Council.

---

[3] In her response, the Commissioner hints that perhaps Dr. Kteleh's note was unreliable because it was "written down on a prescription form and that the doctor has scratched off one number indicating the amount of time [Mr. Snyder] allegedly needed to elevate his legs and replaced it with another."  [Filing No. 19 at 7-8.]  She also notes that Dr. Kteleh did not opine in any other medical records that Mr. Snyder needed to elevate his legs above his heart and had recently advised him to merely "raise his legs and use compressive stocking[s]," and that Mr. Snyder testified that he sat for hours at a time.  [Filing No. 19 at 8.]  However, the ALJ did not discuss these items, and the Court must only consider the *ALJ's* explanation for his decision.  *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("We have made clear that what matters are the reasons articulated *by the ALJ*") (emphasis in original).

## IV.
### CONCLUSION

For the reasons stated herein, the Court **VACATES** the ALJ's decision denying Mr. Snyder benefits and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to 42 U.S.C. § 405(g) (sentence four). Judgment shall issue accordingly.

On remand, the ALJ must consider all record evidence – including the evidence Mr. Snyder submitted to the Appeals Council – and must develop a logical bridge from that evidence to any leg elevation requirement included in Mr. Snyder's RFC.

September 8, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**